**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>Sylvain J. Pinet Sr. and Heather M. Pinet,<br><br>Debtors | Chapter 13<br>Case No. 14-10192 |

## ORDER CONFIRMING MODIFICATION OF CHAPTER 13 PLAN

A chapter 13 debtor's plan is constructed, in part, based on the debtor's assertion of the value of a parcel of real estate. The trustee does not object to confirmation of the plan. After confirmation, the real estate is sold for a price that exceeds the asserted value. Is the trustee then precluded from seeking a modification of the plan? Controlling case law in this Circuit definitively answers that question: the trustee is not precluded from seeking a modification. Whether the Court should approve the modification is a closer question. In the specific circumstance of this case, the requested modification will be approved.

I.    BACKGROUND

This contested matter was taken under advisement after a hearing at which the parties agreed to submit their dispute for decision on the record. *See* Fed. R. Bankr. P. 3015(g) (providing that an objection to a motion to modify is governed by Rule 9014). The following procedural and factual history is derived from the documents on the docket and the recordings of relevant hearings.

This case began in March 2014. The debtors' Schedule A, filed in April 2014, disclosed Mr. Pinet's one-third interest in a single-family home located in West Enfield, Maine (the "Property"). *See* [Dkt. No. 7]. The debtors declared that Mr. Pinet's interest in the Property had

a then-current value of $8,415.00 "based on [a] realtor's opinion of value ($30K) minus liquidation costs of 15%." Id.

About a year after the case began, the Court confirmed the debtors' amended chapter 13 plan. *See* [Dkt. No. 50]. The confirmed plan required the trustee to distribute at least $3,669.28 to the holders of general unsecured claims. [Dkt. No. 36.] Later, the plan was modified, on the debtors' request, to increase the minimum distribution to the holders of general unsecured claims to $3,674.09. *See* [Dkt. No. 51]. This minimum distribution would have yielded a dividend of about 22% on a pool of allowed general unsecured claims equal to $16,442.03. *See* id.

In December 2016, more than twenty-one months after confirmation, the debtors moved for authority to sell the Property for $40,000. *See* [Dkt. No. 57]. They proposed to apply the proceeds first to the outstanding mortgage on the Property, the brokers' commission, and the closing costs, and then to divide the remainder among the three owners of the Property. Id. They proposed to use Mr. Pinet's share as a down payment in connection with the purchase of a new vehicle. Id. The trustee objected to this proposal, arguing that the debtors should contribute the net proceeds over $3,669.28 for the benefit of their general unsecured creditors. [Dkt. No. 60.] When the Court approved the sale of the Property, it authorized the debtors to spend up to $7,000 of the net proceeds on a vehicle and gave the trustee thirty days to file a motion to modify the debtors' plan, failing which the debtors would be free to spend their entire share of the net proceeds. *See* [Dkt. No. 68]. This resolution of the sale motion was not opposed by the debtors or the trustee.

In late 2016 or early 2017, the Property was sold for a gross price of approximately $40,400. Mr. Pinet received $11,362.86 in satisfaction of his one-third interest. The debtors then used $6,000 of the net proceeds as a down payment on a new car. The trustee timely moved

to modify the debtors' plan, seeking to require them to contribute the difference between Mr. Pinet's one-third share of the sale proceeds and the amount that the debtors spent as a down payment on their new car. [Dkt. No. 72.] The trustee asserted that the debtors' financial circumstances had "changed materially" and that the appreciation in the value of the Property was property of the estate under 11 U.S.C. §§ 541(a)(6) and (7). Id. In response, the debtors raised a single substantive objection: the trustee was bound by the terms of their confirmed plan. *See* [Dkt. No. 73].

## II.   DISCUSSION

Confirmation of a chapter 13 plan has binding effect, *see* 11 U.S.C. § 1327(a), and the needs of an efficient bankruptcy system demand a significant degree of finality from the confirmation process. On the other hand, 11 U.S.C. § 1329 is an unmistakable signal that a confirmed plan may be modified. In Barbosa v. Solomon, 235 F.3d 31 (1st Cir. 2000), the First Circuit addressed the tension between the binding nature of confirmation and post-confirmation modifications.

In Barbosa, the chapter 13 petition was filed in October 1996. In re Barbosa, 236 B.R. 540, 542 (Bankr. D. Mass. 1999), *aff'd* Barbosa v. Solomon, 243 B.R. 562 (D. Mass. 2000), *aff'd* 235 F.3d 31. About seven months later, in May 1997, the debtors and their mortgagee stipulated that the value of certain real estate was $64,000. 235 F.3d at 33. The parties also agreed that as to the remainder of the mortgagee's claim (i.e., the unsecured deficiency claim), the plan would provide a dividend of at least 10%. Id. In September 1998, the bankruptcy court confirmed a plan that, in line with the stipulation, provided the mortgagee an allowed secured claim of $64,000 and a 10% dividend on its unsecured deficiency claim. Id. The order confirming the

plan vested all property of the estate in the debtors free and clear of claims and interests other than those described in the plan or in the confirmation order.  Id.

In February 1999, less than five months after the confirmation order was issued and approximately twenty-two months after the stipulation, the debtors moved for authority to sell the property for $137,500, more than twice the stipulated value.  In re Barbosa, 236 B.R. at 543.  When the debtors and the trustee were unable to agree about the disposition of the sale proceeds, the trustee and the mortgagee moved to modify the debtors' plan to compel the debtors to contribute the sale proceeds toward the dividend payable to their unsecured creditors.  Barbosa, 235 F.3d at 33 & n.3.  The bankruptcy court granted the motion to modify and the debtors appealed.  Id. at 35.

On appeal, the First Circuit affirmed, holding that the doctrine of *res judicata* did not bar post-confirmation plan modifications that meet the express requirements of 1329.  Id. at 41.  The Court also declined to impose the judge-made "substantial and unanticipated" change in circumstances test that some courts apply in addition the criteria set forth in the statute.  Id.  The Court explained that the "substantial and unanticipated" change test and the doctrine of *res judicata* are both incongruous with the plain language of section 1329, which permits post-confirmation plan modifications if certain enumerated criteria are satisfied.  Id. at 40-41.  The Court derived additional support for its holding from the legislative history of section 1329, which showed that Congress had intended to the ability-to-pay standard to apply to the debtor even after confirmation.  Id. at 40.  Notwithstanding the plain language of section 1329, the Court accorded a measure of finality to confirmed plans by adopting the bankruptcy court's rule that parties may not use motions to modify to circumvent the appeals process following a failure to object to confirmation or a confirmation over objection.  Id. at 41.  The Court agreed with the

bankruptcy court that "as a practical matter, parties requesting modifications of Chapter 13 plans must advance a legitimate reason for" the modification. Id. (quotation marks omitted).

Barbosa is similar to this case in one basic respect: in each case, a party that did not object to confirmation later asked the Court to approve a post-confirmation modification. Barbosa is different from this case in other temporal and procedural respects. The request to sell the property in Barbosa came less than five months after confirmation of a plan that expressly determined the value of that property. Here, the debtors' only explicit representation of the value of the Property is found in the schedules they filed in April 2014; their request to sell the Property came much later, in December 2016. Barbosa involved considerable appreciation in value and substantial profits. Whether the same is true in this case is fairly debatable. Notwithstanding these distinguishing features, however, Barbosa squarely forecloses the debtors' argument that a modification is prohibited because the chapter 13 trustee is "bound by the terms of the confirmed plan." *See* [Dkt. No. 73]. Under the Code as interpreted in Barbosa, debtors, creditors, and interested parties are entitled to a significant – but not an absolute – degree of finality post-confirmation. *See* 235 F.3d at 41.

The debtors' sole contention faces an additional hurdle: its endorsement would place an unrealistic and unwarranted burden on the chapter 13 trustee. The trustee cannot be expected to obtain independent information regarding the value of every piece of real estate in every chapter 13 case prior to confirmation. The law does not require that and the practicalities of chapter 13 do not permit it. The chapter 13 trustee must, however, take reasonable steps to ensure that questions about valuation are raised, in the first instance, before confirmation. *See, e.g.*, 11 U.S.C. § 1302(b)(1) (requiring chapter 13 trustee to perform duty of investigation specified in section 704(a)(4)). The extent of the "red flags" regarding value at the time of confirmation and

the extent of the trustee's diligence in raising issues before confirmation are among the factors that may be considered in determining whether there is a legitimate reason to approve a post-confirmation modification.

Here, the debtors signed their schedules under oath and provided an objective basis for the asserted valuation of the Property. That asserted value was not patently questionable. In these circumstances, the trustee's motion cannot be fairly characterized as an attempt to circumvent the appeals process following an inexplicable failure to object to confirmation. Instead, the motion is better viewed as an attempt to capture the full extent of the debtors' non-exempt equity for the benefit of their unsecured creditors. This attempt comports with the "ability to pay" standard that animates chapter 13; it is also consistent with Barbosa.

Neither the Code nor Barbosa require bankruptcy courts to approve modifications whenever they are sought. *See* 11 U.S.C. § 1329(a) ("At any time after confirmation of the plan but before the completion of payments under such plan, the plan *may be* modified . . . .") (emphasis added); *see also* Barbosa, 235 F.3d at 41 (reviewing modification of plan for abuse of discretion). The question here is whether the debtors' plan should be modified. The Bankruptcy Code and Barbosa provide the following parameters for this inquiry.

Under the plain language of section 1329 and Barbosa, a party seeking approval of post-confirmation modification must establish three things. First, the proposed modification must fit within the categories of modifications permitted by section 1329(a). Barbosa, 235 F.3d at 41. Second, the modified plan must satisfy the requirements of the Code made applicable by section 1329(b)(1). *See* Barbosa, 235 F.3d at 39-41. Third, the party requesting approval must establish a "legitimate reason" for the modification. Id. at 41.

Here, the trustee has moved to modify the debtors' confirmed plan to increase the funds to be paid to the holders of unsecured claims. This modification is of the type permitted by section 1329(a)(1). All other applicable Code provisions appear to be satisfied, and the debtors have not argued otherwise. All that remains is a determination of whether the trustee has advanced a "legitimate reason" for the proposed modification.

"Whether a party has presented a legitimate reason to modify a plan is a highly fact-dependent question." In re Murphy, 487 B.R. 86, 94-95 (Bankr. D.R.I. 2013). However, "courts have long recognized that a trustee . . . may seek modification when the debtor's financial circumstances change after confirmation and result in the debtor's having the ability to pay more. Gemeraad v. Powers, 826 F.3d 962, 974 (7th Cir. 2016). "Allowing the bankruptcy court, in its discretion, to approve modification for this reason is consistent with Chapter 13's policy of requiring debtors to repay creditors to the extent they are able . . . ." Id. Here, the trustee asserts that a post-confirmation modification is appropriate because the Property sold for a price that was substantially greater than the value listed on the debtors' schedules, and that sale has made it possible for the debtors to pay more to their unsecured creditors. The debtors have not contended or demonstrated that they require 100% of the net proceeds of the sale to support themselves or their dependents. In fact, the debtors used $6,000 of the proceeds to purchase a new vehicle. They have not asserted a need for the remaining proceeds. Thus, in the context of chapter 13, given the specifics of this case, the trustee has established a legitimate reason for the requested modification.

### III.   CONCLUSION

The trustee's motion [Dkt. No. 72] is granted on the following terms. The debtors' confirmed plan is modified to require the payment of $4,362.86 to the chapter 13 trustee for

- 8 -

distribution in accordance with the terms of the plan and the Bankruptcy Code.  The debtors are ordered to pay that amount to the trustee within fourteen days after the date of this order.  Failure to pay the full amount in a timely manner may result in conversion or dismissal.

Dated: April 14, 2017

Michael A. Fagone
United States Bankruptcy Judge
District of Maine